**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

TIMOTHY E. HATCHETT                         *

    Plaintiff                              *

        v                                   *            Civil Action No. DKC-11-1785

J.B. LLEWELLYN, et al.                      *

    Defendants                             *
                          ***

<u>**MEMORANDUM OPINION**</u>

Pending is Defendants' Motion to Dismiss or for Summary Judgment.  ECF No. 13.  Plaintiff opposes the motion.  ECF No. 30.  The court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2011).

**Background**

Plaintiff Timothy Hatchett ("Hatchett") asserts he has been the target of retaliation and discrimination by Defendants against whom he has filed administrative complaints.  ECF Nos. 1 and 3.  He claims that on March 14, 2011, he was scheduled to go to the "in-house library" at 7:45 a.m.  When "yard was going out" at 7:50 a.m., Hatchett walked to the hallway to go to the library.  He was stopped by Officer Steven Miller who was working Housing Unit 4, Control Panel B.  Miller called Hatchett over the intercom and asked where he was going.  When Hatchett explained he was going to "in-house library," Miller told Hatchett he had not called for in-house library yet.  Miller then told Hatchett to go lock-in to his cell for being out-of-bounds.  Hatchett attempted to explain to Miller that no one ever calls for in-house library, "you just go

when yard is going out and if your name is placed on the list."  Hatchett states he never made it to in-house library that day.[1]  ECF No. 3 at p. 4.

Hatchett claims another incident occurred on June 20, 2011, at 7:45 a.m.  He claims his cell was on the fifth spot on the main library list.  At 9:00 a.m. when others who were on the list were going out, Miller, who was again working Housing Unit 4 Control Panel B, refused to allow Hatchett to go to the library by not opening his cell door.  At 9:08 a.m., Hatchett asked Officer J. L. Durst why he was not permitted to go to the library and Durst informed Hatchett that Miller had started at the bottom of the list, opening those doors first.  Durst stated that since Hatchett's cell number was at the beginning of the list, Miller did not make it to his cell and that "maybe next week you can go."  Hatchett explained he worked at 11:30 a.m. and Durst responded that he would have to choose between work and library.  Hatchett states he never went to the library on this date.  ECF No. 3 at p. 6.

On June 24, 2011, at 8:30 a.m., Hatchett states he had been placed on the main library list by Ms. Huebner, the librarian, because he had been denied access to the library on June 20, 2011.  His cell door did not open for institutional pass list movement and Hatchett asked the laundry worker to tell the tier officer, Miller, to open his door so he could go to the library.  The laundry worker came back to Hatchett and said Miller told him, "it's too late."  Hatchett yelled back up the tier and told the laundry worker to let Miller know his pass was for 8:30 a.m., which was the current time.  Miller again told Hatchett it was too late and later came by Hatchett's cell on rounds and told him as long as he (Miller) is working there, Hatchett will never go to the library.  Hatchett states another officer, Stacey Miller, was also working the tier that day and conspired with Officer Steven Miller to keep him from going to the library.  Hatchett claims Steven and

---

[1] Hatchett filed an ARP regarding this incident, however, the copy he submits as an exhibit does not reflect a response from the Warden.  ECF No. 3 at Attachment 1, pp. 1 – 2.

Stacey are related and "in cahoots" with each other.  Hatchett states he never went to the library on June 24, 2011.[2]  ECF No. 3 at p. 6

Hatchett states that J.R. Llewellyn,[3] Housing Unit 4 Manager, signed an Administrative Remedy Procedure (ARP) receipt which concerned a complaint filed by Hatchett alleging Steven Miller had refused to allow him to go to the library on June 20, 2011.  Another officer came on the tier to give Hatchett the signed receipt with the copy of the complaint attached, but instead gave it to Steven Miller.  Although the document was taped closed, Hatchett alleges Steven Miller "breached the tape" and was reading the ARP he filed about him.  ECF No. 3 at p. 6.

Defendant Steven Miller denies under oath ever refusing Hatchett access to the institutional library.  ECF No. 13 at Ex. 1.  He states that on March 14, 2011, he simply required Hatchett to wait until the yard was secure to proceed to the library.  On June 20, 2011, he states he allowed the first twelve inmates out of the housing unit to go to the library and if Hatchett was among those twelve he would have been allowed to go to the library.  *Id*.  Defendant Stacey Miller also states under oath that she has never refused to allow Hatchett to go to the library.  *Id*. at Ex. 2.

---

[2] Hatchett filed an ARP concerning the events described which was dismissed because "Inmates may not file requests for administrative remedy or appeals on behalf of other inmates, staff or third persons."  ECF No. 3 at Attachment 1, p. 3.  The complaint was later returned to the prison Administrative Remedy Coordinator (ARC), Officer T. Dorcon by K. Hill Peay the Assistant ARP/IGP Coordinator because she did not concur with the rationale for the dismissal for procedural reasons.  ECF No. 29 at Attachment 1, p. 7.  Warden Shearin then reviewed the ARP substantively and dismissed it as meritless on September 6, 2011, stating that an investigation revealed that Hatchett was not denied access to the library on June 20, 2011 and that he has other opportunities to go to the housing unit library in the event the main library is filled.  *Id*. at p. 15.

[3] Hatchett expands on Llewellyn's involvement in his Response in Opposition.  ECF No. 29 at p. 1.  He states that Steven and Stacey Miller would not allow him to work and earn good conduct credits after he was assigned a job.  Hatchett alleges that Llewellyn "vowed to straighten out things" to induce Hatchett to "sign off" on an ARP he filed about the officers.  *Id*.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

In order to prevail on a claim of retaliation, Hatchett "must allege [and prove] either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or

that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  It is unclear how much of a showing of adversity must be made in order to survive a motion for summary judgment.  *Compare Burton v. Livingston*, 791 F.2d 97, 100-101 (8th Cir. 1986) ("complaint that a prison guard, without provocation, and for the apparent purpose of retaliating against the prisoner's exercise of his rights in petitioning a federal court for redress, terrorized him with threats of death" sufficient to state claim).  "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

> Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim.

*ACLU of Maryland, Inc. v. Wicomico County*, Md.  999 F.2d 780, 785 (4th Cir. 1993).

"In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) quoting *Adams v. Rice*, 40 F.3d 72,74 (4th Cir. 1994).

Hatchett concludes that he was prevented from going to the library on three occasions over a period of three months in retaliation for filing ARPs complaining about Officers Steven and Stacey Miller's conduct.  ECF No. 3.  In his Response in Opposition, Hatchett claims his complaint concerned their concerted efforts to prevent him from working at an institutional job

assignment to earn money as well as diminution of confinement credits.  ECF No. 29.  He further contends that his access to the courts was abridged when he was denied permission to go to the library on the three occasions alleged.  *Id*. at p. 4.

Hatchett fails to specify an actual injury resulting from either the alleged retaliation or the denial of access to courts.   Hatchett has not overcome Defendant Steven Miller's sworn explanation regarding logistics in accommodating requests to attend various activities by the inmate population and the availability of library services on other occasions that rebut his assertion the actions were retaliatory.   The Complaint itself does not contain any factual allegation that any Defendant in this case was motivated by a retaliatory animus and Plaintiff has not provided any evidence of such a motive.   Additionally, the asserted adverse action did not chill Hatchett's propensity to litigate civil rights claims.   *See Hatchett v. Warden*, Civil Action DKC-11-1969 (D. Md.) (filed July 18, 2011); *Hatchett v. Stouffer*, Civil Action DKC-11-2683 (D. Md.) (filed September 16, 2011); and *Hatchett v. Shearin*, Civil Action DKC-11-2720 (D. Md.) (filed September 21, 2011).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'  *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) *quoting Lewis v. Casey*, 518 U.S. 343, 355 (1996).   "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches."  *Lewis*, 518 U.S. at 349.  Hatchett has not even alleged he has missed an opportunity to pursue a meritorious challenge to his conviction or challenge to the conditions of his confinement resulting from the three occasions he was

6

allegedly prevented from attending the library.  Absent an actual injury, Hatchett's claim against Officer Steven Miller fails.

Hatchett's claim against Officer Stacey Miller is subject to dismissal as purely speculative in nature.  There are no allegations that she was personally involved in any conduct to prevent Hatchett from attending the library or that she caused him harm.  Hatchett's claim against Llewellyn is that he is responsible simply because he is the housing unit manager.  The claim must fail; it is well established that the doctrine of respondeat superior does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).

By separate Order which follows, Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted.

Date:   June 29, 2012                                 /s/
                                      DEBORAH K. CHASANOW
                                      United States District Judge